**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| WAT BUDDHA-DHAMMA, N.F.P, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CASE NO. 09-cv-7593 |
| | ) | |
| PRINN STANG and WANDA STANG., | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants' motion to dismiss [9] this case for lack of subject matter jurisdiction. For the reasons stated below, Defendants' motion [9] is granted and this matter is dismissed for lack of subject matter jurisdiction.

**I.     Background**

**A.     Introduction**

Defendants Prinn Stang and Wanda Stang are former officers of Plaintiff Wat Buddha-Dhamma ("the Temple"), an Illinois not-for-profit corporation located in Willowbrook, Illinois. Plaintiffs Montatip Bunluaphob, Santana Khongyai, and Pewpran Abdennadi (collectively the "Individual Plaintiffs") are each members of the Temple's executive board and are residents of Illinois. According to the allegations in the complaint, during early 2009, Defendants were suspended from their positions as officers within the Temple for misconduct, which included their failure to account to the Temple about its assets, their failure to attend corporate meetings, and other continued disruptive and wrongful conduct. Despite this suspension, Plaintiffs claim that Defendants have continued to act as purported representatives of the Temple, without any authority by the Temple to do so, and have made false reports to local law enforcement officials

1

in an effort to harass, oppress, embarrass, and annoy the Temple and its constituents. The complaint alleges that Defendants' conduct has resulted in unauthorized lawsuits in the name of the Temple, lawsuits against the Temple, and conversion of assets of the Temple.

On December 7, 2009, Plaintiffs filed suit in federal court, alleging state law causes of action against Defendants for violation of Section 103.20 of the Illinois General Not for Profit Corporation Act of 1986 for wrongful assumption of corporate powers (805 ILCS 105/103.20 (West 2008)), breach of fiduciary duty, malicious prosecution, conversion, and an accounting. Plaintiffs allege that the Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 based upon the complete diversity of citizenship of the parties and an amount in controversy exceeding the jurisdictional minimum of $75,000.00. In response to Plaintiffs' complaint, Defendants filed a motion to dismiss for lack of subject matter jurisdiction, claiming that diversity of citizenship does not exist because Defendants, particularly Wanda Stang, reside in the State of Illinois, as opposed to the State of Indiana. The Court permitted the parties to engage in a rather lengthy period of jurisdictional discovery to develop a factual basis for consideration of Defendants' motion to dismiss.

**B.    Facts pertaining to jurisdiction**

According to the Stangs, Prinn Stang, M.D., an obstetrician, delivers babies and performs surgeries at three separate hospitals in Indiana and has a medical office with approximately five employees in Merrillville, Indiana. Dr. Stang maintains a current Indiana medical license. Wanda Stang works at his office, and both file Indiana state income taxes. Both Stangs are registered to vote in Indiana and have been since 1982, although they only recall voting once in the past twenty years. Both have Indiana drivers' licenses, with their address listed as the

medical office in Merrillville, Indiana. If Dr. Stang is on call, which he estimates to occur approximately fifteen to eighteen days per month, he sleeps at his Merrillville office.

The Stangs own a townhome that is located (rather ironically) at 1407 S. Indiana Avenue in Chicago, Illinois. They purchased the townhome in the mid-nineties when their daughter, Kathleeya, was attending the University of Chicago Lab School. According to Dr. Stang, they purchased the townhome for three reasons: (1) as an investment, (2) because their daughter was attending school in Chicago and they wanted to be closer to her high school, rather than having her commute from Indiana, and (3) to "enjoy city life." According to the Stangs, when construction on the townhome was complete, they moved their personal clothing and belongings to the Chicago townhome. Kathleeya Stang, who also is a doctor, lived in the townhome until she recently finished her residency, married, and moved to North Carolina. The Stangs also own a home in Valparaiso, Indiana, which they bought in the 1980s, when their daughter was in first grade, and in which they lived until they moved to Chicago. Their thirty-eight year old son now lives in the Valparaiso home.[1] There has not been any evidence presented that the Stangs still live at the Valparaiso residence with their son. Nor is there evidence that on the nights that Dr. Stang does not make the approximately 44-mile drive to return home to Chicago, he instead takes the 16-mile trek to Valparaiso to catch some shut-eye, rather than sleeping in his office.[2]

Most of the Stangs' business is conducted in Indiana. The Stangs do all of their banking in Indiana and most of their bills are sent to Dr. Stang's Merrillville office. Their accountant

---

[1] In their interrogatories and at their depositions, Wanda Stang claimed ownership in nine properties – five in Illinois and four in Indiana – and Prinn Stang claimed ownership in ten – they same nine as Wanda plus his medical office in Merrillville, Indiana. Aside from the office, the townhome in Chicago, and the Valparaiso house, the remainder of the properties are rentals.

[2] The distances between the various locations have been calculated using www.mapquest.com. The Court may take judicial notice of those distances. See, *e.g.*, *Lowrance v. Pflueger*, 878 F.2d 1014, 1018 (7th Cir. 1989); *Kimble v. Potter*, 2009 WL 2045379, at *1 n.1 (N.D. Ill. July 13, 2009); Fed. R. Evid. 201(b)(2).

lives in Indiana. The Stangs have four or five vehicles, one (the 1987 Mercedes Benz) that has an Illinois license plate and the rest that have Indiana plates. Wanda Stang has a cell phone with an Indiana number. When asked why they have not switched over their Indiana taxes, licenses, and voting, Dr. Stang responded that they are "just accustomed to that." Dr. Stang also stated that because he spends so much time at work, he uses his business address for most of his business and personal affairs. Wanda Stang testified that her husband handles all of the family's business and financial affairs, such as banking, taxes, bills, and the like.

In the various *pro se* lawsuits that Wanda Stang has filed in Illinois state courts in recent years, she has listed her address as 1407 S. Indiana, Chicago, Illinois. However, in a recent lawsuit in DuPage County, she wrote a letter to the judge in that case and stated, in part, "I live in Indiana and need to drive to Illinois to find a lawyer." During her deposition, Wanda claimed that her statement reflected the fact that most of her waking hours are spent working in Indiana and that most of the Stangs' affairs are conducted in Indiana, meaning that most of the people they associate with are from Indiana. She maintains that while she spends most of the day in Indiana, she returns to Chicago each night to cook and sleep and that she intends to remain in Illinois indefinitely.

If Wanda is not travelling out of the area (to Boston, North Carolina, or Thailand), she sleeps at the Chicago home, as does Dr. Stang, when he is not on call. When Dr. Stang is on call, he sleeps on a recliner at the office, or in the doctors' on-call room at the hospital. The Stangs have a landline and internet access at their Chicago home. Prior to the filing of this lawsuit, the Stangs worshipped for several years at the Temple, which is located in Willowbrook, Illinois, and, by all accounts, were active members of the Temple's religious community.

Jill Manka, an employee of Dr. Stang's for the past twenty years and the office manager at Dr. Stang's Merrillville office, stated in her affidavit that Wanda never sleeps at the office, that she has visited the Stangs' Chicago residence on over twenty occasions, that she observed their personal clothing and belongings at the Chicago residence, and that, to her knowledge, they have not lived at any other address since moving to Chicago in the mid-nineties. The Stangs' children also attested to the Stangs' residence in Chicago, remarking that family holidays and significant occasions, such as graduations and wedding celebrations, have been celebrated at the Chicago townhome.

## II.     Analysis

When ruling on a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b), the court must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff. *United Phosphorus, Ltd. v. Angus Chemical Co.*, 322 F.3d 942, 946 (7th Cir. 2003); *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995). When the complaint is formally sufficient to establish diversity jurisdiction, the court looks beyond the allegations to view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists. *United Phosphorus*, 322 F.3d at 946; *Ezekiel*, 66 F.3d at 897. Plaintiffs assert that the Court has jurisdiction based on diversity of citizenship. See 28 U.S.C. § 1332. In order for jurisdiction to be founded on diversity of citizenship, there generally must be complete diversity of citizenship – that is, no plaintiff can be a citizen of the same state as any defendant. See *LM Ins. Corp. v. Spaulding Enters. Inc.*, 533 F.3d 542, 546 n.1 (7th Cir. 2008) (citing *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806)). In general, the inquiry focuses on diversity of citizenship at the time that the lawsuit was filed. See *Aurora Loan Servs., Inc. v. Craddieth*, 442 F.3d 1018, 1025 (7th Cir. 2006). As the party asserting federal

jurisdiction, Plaintiffs bear the burden of proof (*Craig v. Ontario Corp.*, 543 F.3d 872, 876 (7th Cir. 2008); *America's Best Inns, Inc. v. Best Inns of Abi-lene, L.P.*, 980 F.2d 1072, 1074 (7th Cir. 1992)), and must establish jurisdiction by a preponderance of evidence. *LM Ins. Corp. v. Spaulding Enterprises Inc.*, 533 F.3d 542, 547 (7th Cir. 2008); *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 540-41 (7th Cir. 2006).

To determine an individual's citizenship for diversity purposes, courts look to the state of the individual's domicile when the complaint was filed. *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830 (1989); *Denlinger v. Brennan*, 87 F.3d 214, 216 (7th Cir. 1996). Domicile has two elements: (i) physical presence or residence in a state and (ii) an intent to remain in the state. *Denlinger*, 87 F.3d at 216; see also *Galva Foundry Co. v. Heiden*, 924 F.2d 729, 730 (7th Cir. 1991) (noting that "the state of the individual's domicile [is] the state he considers his permanent home") (internal citations omitted). Intent for diversity purposes has been described as "a state of mind which must be evaluated through the circumstantial evidence of a person's manifested conduct." *Sadat v. Mertes*, 615 F.2d 1176, 1181 (7th Cir. 1980) (internal quotation marks omitted).

In situations where an individual has multiple residences in different states, the test can turn into a complex inquiry into an individual's intent. *Galva Foundry*, 924 F.2d at 730. When a person's domicile is unclear, the pertinent considerations include the location of his residence, family, and personal belongings and where he exercises his political rights, conducts his business and financial transactions, pays taxes, and has his driver's license. See, *e.g., Pedersen v. Chi. Transit Auth.,* 1996 WL 328039, at *1 (N.D. Ill. June 11, 1996); *Abboud v. Nw. Home Servs., Inc.,* 1990 WL 93345, at *2 (N.D. Ill. June 20, 1990); see also *McKnight v. Intercontinental Hotels Group PLC,* 2006 WL 2868905, at *2 (N.D. Ill. Oct. 3, 2006) ("[I]n determining a natural

6

party's domicile, the court analyzes the totality of the circumstances, looking at factors such as current physical residence, place of employment, location of real property, voter registration, driver's license registration, and tax payments."). While one or more of these factors might weigh in favor of a finding of citizenship in a particular state, no single factor is dispositive, as many of these factors easily can be manipulated in order to opt in or out of federal diversity jurisdiction. See *Ner Tamid Congregation of North Town v. Krivoruchko*, 620 F. Supp. 2d 924, 932 (N.D. Ill. 2009). Thus, the Court is mindful of the purpose of diversity jurisdiction when assessing a person's domicile. Judge Posner put a fine point on this:

> Unfortunately, in this age of second homes and speedy transportation, picking out a single state to be an individual's domicile can be a difficult, even a rather arbitrary, undertaking. Domicile is not a thing, like a rabbit or a carrot, but a legal conclusion, though treated as a factual determination for purposes of demarcating the scope of appellate review. And in drawing legal conclusions it is always helpful to have in mind the purpose for which the conclusion is being drawn. The purpose here is to determine whether a suit can be maintained under the diversity jurisdiction, a jurisdiction whose main contemporary rationale is to protect nonresidents from the possible prejudice that they might encounter in local courts.

*Galva Foundry*, 924 F.2d at 730.

In the present case, Plaintiffs have come forward with ample evidence demonstrating the Stangs' ties to Northwest Indiana. The Stangs conduct many of their business and personal affairs – licensing, taxes, bills, and voting registration – out of the Merrillville office. Additionally, as Plaintiffs point out, the Stangs freely admit that they are physically present in the State of Indiana almost every day of the week. Indeed, with Defendants spending so much time in Indiana for work, it is not surprising that they conduct many of their business and personal affairs out of Dr. Stang's office. Because both of the Stangs work long hours, the convenience factor likely causes them to utilize Indiana professionals (doctors, accountants, and lawyers) and services (licensing and car dealerships), rather than trying to find those services on

7

the weekends or evenings in Illinois.[3] Plaintiffs also point out that Wanda Stang represented to an Illinois state court judge that she lives in Indiana; but cutting against that admission is the fact that Wanda Stang repeatedly has listed her Chicago residence as her home when filing her *pro se* complaints.[4]

The evidence also demonstrates that for more than approximately fifteen years, Wanda Stang has driven home from work every night and sleeps in Chicago, and, work permitting, Dr. Stang does as well. The Stangs sent their daughter to grade school and high school in Chicago (after their son graduated from boarding school in Indiana and was at college in Minnesota). And until May 2007, when she got married, Kathleeya lived with her parents in Chicago at 1407 S. Indiana while she attended high school, college, and medical school. Plaintiffs have failed to present any evidence that Wanda sleeps in Indiana, aside from the occasional winter night when weather prohibits her from driving back to Illinois. As for Dr. Stang, the nights that he spends in a reclining chair or a hospital on-call room in Indiana are the nights that he spends working. As for traditional weekend activities (such as attending religious services or celebrating special occasions), which occur outside of "regular" business hours, the evidence shows that the Stangs chose to worship and socialize in Illinois. Notably, this lawsuit arises out of a dispute between the Stangs and members of the Executive Board of the Stangs' place of worship, located in Willowbrook, Illinois. Finally, although the Stangs admit that they do not socialize with their South Loop neighbors, they have hosted several functions at their townhome over the years.

---

[3] Plaintiffs also highlight that Dr. Stang is licensed to practice medicine in Indiana, but not Illinois. Yet Indiana is where he works and sees patients; he does not need to be licensed in Illinois.

[4] This lawsuit is not the proper forum for any investigation into whether Wanda Stang may have misled the state court judge or whether the Stangs might have obligations to file tax returns in Illinois, as Plaintiffs suggest.

Given the Stangs' numerous connections to Northwest Indiana, if Plaintiffs had presented evidence that the Stangs had a home, as opposed to office space, in Indiana, then this might be a different case. If Wanda spent all day working in Northwest Indiana, and half her nights sleeping there, then the result urged by Plaintiffs would make more sense. Similarly, if the Stangs regularly voted in Indiana, that fact might be inconsistent with showing intent to remain in Illinois for purposes of establishing domicile. Yet, based on the record before the Court, there also are numerous connections to Illinois, and the only "residence" where the Stangs sleep is the Chicago townhome. Dr. Stang sleeps at the office or hospital when he has to work late, but those arrangements fall short of establishing a residence in Indiana. Also, neither party has presented evidence that the Stangs live with their thirty-eight year old son at the Valparaiso home. The Stangs' son stated in his affidavit that his parents have lived in the townhome "continuously" since moving to Chicago in the mid-nineties, and Kathleeya Stang's affidavit corroborates this. Thus, while the Stangs have several properties in both Illinois and Indiana, they appear to only have one "home." Given the close proximity of Chicago to Northwest Indiana, it is not uncommon to work in one state while living in the other, as it appears the Stangs have chosen to do. One need only glance at license plates during rush hour on the Skyway, the Bishop Ford Freeway, Interstate 80, or US Route 30 to recognize this phenomenon.

The location of the Stangs' residence and personal belongings, the fact that they moved to Chicago almost fifteen years ago so that their daughter could attend a Chicago high school and have remained there since, and the fact that they worship and celebrate significant family milestones in Illinois all support a finding that their domicile is Illinois. That the Stangs have had these ties to Illinois for a long period of time supports the conclusion that their move to Illinois was not motivated by a desire to defeat diversity in this case. That the factors point more

strongly in the direction of an Illinois domicile for Wanda Stang than Prinn Stang is immaterial, for if either Defendant is a citizen of Illinois, then complete diversity is destroyed.

To be sure, there are some significant factors militating in the other direction – especially the evidence that the Stangs exercise their political rights (however sparingly) and conduct the majority of their personal and business affairs in Indiana. However, the purpose behind the diversity jurisdiction statute – protecting nonresidents from the possible prejudice that they might encounter in local courts – points more strongly in the direction of Illinois rather than Indiana. See *Galva Foundry*, 924 F.3d at 730. There is no reason to believe that the Temple or the Individual Plaintiffs would encounter hostility pursuing their state law claims in the Illinois state courts. And Defendants clearly do not want to be in federal court. It is Plaintiffs who seek a federal forum, yet Plaintiffs indisputably are citizens of Illinois. Thus, even if balancing the various factors (residence, belongings, and family affairs on the one hand versus considerations such as place of employment and where the person conducts his business and financial transactions, pays taxes, votes, and has a driver's license on the other hand) results in a close call in regard to whether the Stangs have demonstrated that they "intend to remain" in Chicago (*Denlinger*, 87 F.3d at 216), their almost fifteen years of residency in Chicago plus the absence of strong countervailing policy concerns given the fact that it is Plaintiffs, not Defendants, who are pushing for a federal forum (*Galva Foundry*, 924 F.2d at 730) weigh in favor of concluding that the Stangs' domicile is Illinois.

**III.    Conclusion**

For the foregoing reasons, Defendants' motion [9] is granted and this matter is dismissed for lack of subject matter jurisdiction.[5]

Dated:  August 12, 2010        _____
                               Robert M. Dow, Jr.
                               United States District Judge

---

[5] Illinois law permits a plaintiff to "commence a new action within one year or within the remaining period of limitation, whichever is greater," after an action "is dismissed by a United States District Court for lack of jurisdiction."  735 ILCS 5/13-217.